IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Barry Segal, | Civil File No. _____ |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Metropolitan Council, dba Metro Transit, | |
| Defendant. | |

## INTRODUCTION

1. Barry Segal is a regular passenger on Metro Transit buses. He rides a Metro Transit bus to his work place in St. Paul almost every day. Metro Transit is the public transit system for the Minneapolis-St. Paul Twin Cities area which is owned and operated by Defendant Metropolitan Council.

2. Mr. Segal is a man who is DeafBlind. He has a service dog, Daisy, who assists him with traveling on the bus and making his way through the Twin Cities.

3. Since September 22, 2016, Mr. Segal has experienced at least 38 occasions when Metro Transit bus drivers did not stop at the designated bus stop where Mr. Segal was waiting. The designated bus stop is also known as the Transit Bus Stop Sign (T Sign). These failures expose Mr. Segal to risks of injury, because the T Sign is located at a place where there is a safe and secure passageway to the bus. In order to reach the bus when the bus driver does not stop at the designated T Sign, Mr. Segal would have to

1

leave the level and safe passageway and attempt to make his way to the bus over uneven ground that is often muddy and slippery, which is very dangerous for him.

4. Mr. Segal has also experienced problems when a Metro Transit bus that does not arrive at a bus stop first, does not pull up to the T Sign after a bus leaves that has arrived earlier. When this happens, Mr. Segal cannot tell if the bus that did not pull forward to his stop is the bus he was waiting for.

5. Metro Transit claims it has an explicit policy that directs bus drivers to stop at designated T Signs. It also claims it has a policy that directs drivers to pull up to the T Sign after a bus leaves that has arrived earlier. Metro Transit bus drivers do not consistently follow these policies.

6. Mr. Segal has complained to the bus drivers and to Metro Transit managers on many occasions when bus drivers failed to stop at the designated T Sign location. However, Mr. Segal's complaints have not corrected the problems. Mr. Segal continues to experience incidents when bus drivers who do not stop for him at the T Sign.

7. The failure of Metro Transit drivers to stop at designated T Signs, and their failure to pull ahead to the designated T Sign when an earlier bus leaves, violates requirements of the Americans with Disabilities Act (ADA) (42 U.S.C. §§ 12131), the Federal Rehabilitation Act (29 U.S.C. § 794)) and the Minnesota Human Rights Act (MHRA) (Minn. Stat § 363A.12), and the regulations implementing those statutes. In addition, the failure of the Defendant Metro Transit to adequately train and supervise its drivers concerning their duty to stop buses at designated bus stops, violates the ADA, the

Federal Rehabilitation Act and the MHRA, and the regulations implementing those statutes.

8. Mr. Segal brings this lawsuit requesting injunctive relief, an award of all damages allowed by the statutes, and an award of statutory attorney's fees and expenses.

## JURSIDICTION

9. This Court has jurisdiction over Plaintiff's case because it asserts claims based on federal statutes.

10. Venue is proper within this District.

## PARTIES

11. Plaintiff, Barry Segal, resides in Minneapolis, Minnesota.

12. Mr. Segal is a person who is DeafBlind. His vision and his hearing are severely limited.

13. Defendant Metropolitan Council is the regional policy-making body, planning agency, and provider of essential services for the Twin Cities metropolitan region, created by the Minnesota Legislature. It is a political subdivision of the State of Minnesota.

14. Defendant operates Metro Transit, which is one of Defendant's programs and services, as that term is used by Minn. Stat. § 363A.12.

15. Metro Transit is a public transportation system that provides bus, light rail and other transit services in the Twin Cities metropolitan area.

## FACTS

16. Mr. Segal is a regular passenger on Metro Transit buses in the Twin Cities Metro area.

17. Among other destinations, Mr. Segal regularly rides Metro Transit buses:

- Between his home in Minneapolis, Minnesota and his work place in St. Paul, Minnesota;

- Between his home and the University of Minnesota; and

- Between his home and the downtown Minneapolis area.

18. Mr. Segal intends to continue using Metro Transit buses in the future.

19. On at least 28 occasions since September 22, 2016, Mr. Segal encountered barriers and obstacles to his access to bus service provided by Defendant. These occasions include the following:

    a. On many occasions when Mr. Segal was waiting for his bus at the designated T Sign, the bus did not stop at the T Sign. Instead the driver stopped the bus some distance away from the T Sign.

    b. On other occasions, when Mr. Segal was waiting for his bus at the designated T Sign, two buses arrived, one after the other. The second bus did not pull ahead to the T Sign where was Mr. Segal was waiting when the first bus left. The second bus pulled around the first bus and left without stopping at the T Sign where Mr. Segal was waiting. Mr. Segal could not independently determine whether the second bus, which left without him, was the bus he was waiting for.

20. Mr. Segal notified Metro Transit management each time he encountered these problems.

21. Metro Transit knew about the problems Mr. Segal was experiencing but failed to take adequate action to correct them and prevent them from re-occurring.

22. Metro Transit failed to implement adequate and effective training and supervisory action to prevent the kinds of problem Mr. Segal experienced from re-occurring.

23. Mr. Segal also complained to bus drivers who failed to stop at designated bus stops. On several occasions bus drivers told Mr. Segal they had not been trained or directed to stop at the bus stop location.

24. Metro Transit did not issue a policy bulletin concerning the requirement of stopping at designated bus stops until November 2017, when it issued Bulletin #99, which directs drivers to stop at Transit Bus signs (T-signs) and, if the driver's bus is not the first bus to arrive at the stop, to pull ahead to the T-sign before departing. A true and accurate copy of Bulletin #99 is attached to this Complaint as Exhibit A.

25. Even after Metro Transit issued Bulletin #99, Metro Transit bus drivers continued to fail to stop at designated T Signs. Since November 2017, Mr. Segal has experienced at least 25 occasions when bus drivers did not stop at his bus stop location.

26. In the Summer of 2017, Metro Transit told Mr. Segal it was going to conduct a Blind Awareness training for all its drivers and supervisors which would include training concerning the obligation of bus drivers to stop at designated T Signs. Metro Transit representatives told Mr. Segal the Blind Awareness training would take place in October 2017. This training did not happen in October 2017 and has not happened as of the date of this Complaint.

27. The actions, and failures of Defendant Metropolitan Council to act caused Mr. Segal emotion harm, including, but not limited to fear, anxiety, stress and humiliation.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

28. Plaintiff realleges the contents of Paragraphs 1 - 27 and incorporates them in this cause of action by reference.

29. Mr. Segal is a person with a disability as that term is used in Title II of the Americans With Disabilities Act (ADA) (42 U.S.C. §§ 12131).

30. Defendant Metropolitan Council is a public service as that term is used in the ADA.

31. Defendant's actions and failures to act violated the requirements of the ADA to provide full and equal access to and benefit from Metro Transit services, including adequately and effectively training and supervising its drivers to stop Metro Transit buses at designated bus stops.

32. Defendant's actions, omissions, policies and practices discriminated against Plaintiff on the basis of disability and denied him the equal benefit of its services, programs and activities in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 and its implementing regulations (28 C.F.R. Part 35).

33. As a result of Defendant's actions, omissions, policies and practices, and its violations of Title II of the Americans with Disabilities Act, described in this Complaint, Plaintiff suffered the harm described in Paragraph 26 of this Complaint.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE FEDERAL REHABILITATION ACT

34. Plaintiff realleges the contents of Paragraphs 1 - 33 and incorporates them in this cause of action by reference.

35. Mr. Segal is a person with a disability as that term is used in the Federal Rehabilitation Act.

36. To the best of Plaintiff's knowledge and belief, Defendant receives federal funds for the operation of Metro Transit.

37. Defendant Metropolitan Council is a public service as that term is used in the Federal Rehabilitation Act.

38. Defendant's actions, omissions, policies and practices discriminated against Plaintiff on the basis of disability and denied him full and equal access to and benefit from Metro Transit services, including adequately and effectively, training and supervising its drivers to stop Metro Transit buses at designated bus stop T Signs, in violation of the requirements of the Federal Rehabilitation Act (29 U.S.C. §794).

39. As a result of Defendant's actions, omissions, policies and practices, and its violations of the Federal Rehabilitation Act, described in this Complaint, Plaintiff suffered the harm described in Paragraphs 26 of this Complaint.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT (MHRA)

40. Plaintiff realleges the contents of Paragraphs 1 - 39 and incorporates them in this cause of action by reference.

41. Mr. Segal is a person with a disability as that term is used in the Minnesota Human Rights Act (MHRA).

42. Defendant Metropolitan Council is a public service as that term is used in the MHRA

43. Defendant's actions, failures, policies and practices violated the requirements of the MHRA to provide full and equal access to and benefit from Metro Transit services, including adequately and effectively, training and supervising its drivers to stop Metro Transit buses at designated bus T Signs.

44. Defendant's actions, failures, policies and practices also failed to ensure Plaintiff program access to the programs, services and facilities of Metro Transit, in violation of Minn. Stat. §§ 363A.12 and 363A.03, Subd. 33.

45. Defendant's actions, omissions, policies and practices have subjected Plaintiff to illegal discrimination by reason of his disability in violation of Minn. Stat. § 363A.12.

46. As a result of Defendant's actions, omissions, policies and practices, and its violations of the Minnesota Human Rights Act described in this Complaint, Plaintiff suffered the harm described in Paragraph 26 of this Complaint.

## RELIEF REQUESTED

Plaintiff, therefore, respectfully requests that this Court issue the following relief:

1. **INJUNCTIVE RELIEF**

    a. Order Defendant to fully and adequately train its managers, supervisors, drivers and staff concerning the duty to stop Metro Transit buses at designated T Signs, and concerning the obligation of a second arriving bus to pull up to the designated T Sign when an earlier bus departs.

    b. Order Defendant to fully and adequately train its managers, supervisors, drivers and staff concerning providing full and equal access to and benefit from Metro Transit services to customers who are DeafBlind.

    c. Order Defendant to adopt and implement effective supervisory measures to enforce the requirements of the ADA, the Federal Rehabilitation Act and the MHRA.

    d. Order Defendant to adopt and implement effective policies to ensure customers who are DeafBlind receive full and equal access to and benefit from Metro Transit services and programs.

    e. Order such other and further action by Defendant that may be necessary to enforce the requirements of the ADA, the Federal Rehabilitation Act and the MHRA as they pertain to providing services for people who are Deaf, DeafBlind or Blind and to deter future violations by Defendant.

2.  Award Plaintiff compensatory damages in an amount in excess of Thirty-Thousand Dollars ($30,000), pursuant to Minn. Stat. § 363A.33, Subd. 6, and Minn. Stat. § 363A.29, Subd. 4, the ADA, and the Federal Rehabilitation Act;

3.  Award punitive damages in favor of Plaintiff and against Defendant in the amount of Twenty-Five Thousand Dollars ($25,000), pursuant to Minn. Stat. § 363A.33, Subd. 6, and Minn. Stat. § 363A.29, Subd. 4;

4.  Award Plaintiff treble damages, pursuant to Minn. Stat. § 363A.33, Subd. 6, and Minn. Stat. § 363A.29, Subd. 4;

5.  Order Defendant to pay a civil penalty pursuant to Minn. Stat. § 363A.33, Subd. 6, and Minn. Stat. § 363A.29, Subd. 4; and

6.  Award Plaintiff statutory attorney's fees and expenses pursuant to Minn. Stat. § 363A.33, Subd. 7, the ADA, and the Federal Rehabilitation Act.

**MID-MINNESOTA LEGAL AID**
**MINNESOTA DISABILITY LAW CENTER**

Dated: August 9, 2018

s/Roderick J. Macpherson III
Roderick J. Macpherson III (#66163)
Attorneys for Plaintiff
430 First Avenue North, Suite 300
Minneapolis, MN 55401
Telephone: (612) 746-3731
Facsimile: (612) 334-5755
E-Mail: rjmacpherson@mylegalaid.org